See also, D.C., 81 F.R.D. 625.

**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court,
S. D. New York,

March 15, 1979.

---

1. *See generally United States v. International Business Machines Corp.,* 67 F.R.D. 40 (S.D.N.Y.1975).

U. S. Dept. of Justice, Antitrust Division, for United States.

Cravath, Swaine & Moore, New York City, for defendant IBM.

## MEMORANDUM AND ORDER

EDELSTEIN, Chief Judge:

The United States of America [hereinafter government], plaintiff in this civil antitrust action, has moved this court for an order directing Erich Bloch [hereinafter Bloch] to produce for inspection and copying certain documents under his custody and control that had been the subject of a deposition subpoena duces tecum and ad testificandum served on him on December 18, 1978. Bloch, a pending trial witness for defendant International Business Machines Corporation [hereinafter IBM], is the Vice President and General Manager of defendant's System Products Division. Having made timely objection under Rule 45(d)(1), Fed.R.Civ.P., to the government's subpoena duces tecum, IBM and Bloch now oppose the government's motion to obtain an order compelling production.[1]

IBM and Bloch contend that the subpoena in question is null and unenforceable because it is the *second* subpoena served on Bloch: "Once plaintiff sought a subpoena duces tecum addressed to Erich Bloch as it was entitled to do under the Court's Amended Pretrial Order 16 . . . the Court's Order no longer gave any authority for the issuance of subsequent subpoenas." (Memorandum of IBM and Bloch at 4.) An initial subpoena setting November 30, 1978 as its return date had been served on Bloch on November 3, 1978. According to counsel for IBM and Bloch, after timely objections to the subpoena had been filed, "the parties agreed to adjourn the return date of the November 3 subpoena *sine die*." (Affidavit of Ronald S. Rolfe at 2.) The government's papers contain no reference to any such agreement. Indeed, the government states that because negotiations to arrange an alternative return date were unsuccessful and "continued through the November 30, 1978 return day of the November 3, 1978 subpoena, that subpoena was rendered unenforceable." (Plaintiff's Memorandum at 1.)[2] The government caused a second subpoena to be issued, and served it on Bloch on December 18, 1978. Except for the addition of one paragraph requesting copies of certain interviews Bloch had granted, the second subpoena is the same as the first. It is this second subpoena that the government by its present motion seeks to enforce.

1. IBM and Bloch do not contest the government's motion insofar as that motion seeks production of Bloch's resume prepared in connection with his testimony and Bloch's "personal files" containing documents responsive to the subpoena which are not maintained in IBM's files. [Memorandum of IBM and Bloch at 1.)

2. It would have been helpful had the parties reduced to writing any understanding to adjourn the return date.

■ The factual assertions of counsel described above are in conflict. The legal arguments based upon those assertions are hypertechnical and elevate form over substance. *See United States v. First City National Bank*, Civil No. EP–78–CA–129, slip op. at 10 (Temporary Emergency Court of Appeals, March 5, 1979). In any event, IBM's and Bloch's argument that the orders amending Pretrial Order 16 limit the government to a single subpoena finds no support in the plain language of the orders. Therefore, the court considers the December 18 subpoena to be in effect and does not reach the question whether the return date of the November 3 subpoena was adjourned. IBM and Bloch have interposed objections to the December 18 subpoena and have responded on the merits to the government's instant motion.

■ Turning to the substantive issues, IBM and Bloch argue that the burden of production to be imposed upon them is substantial and that the government has demonstrated no justifiable need for the documents sought. While the government's document demand is substantial, IBM and Bloch have not convinced the court that the burden of production involved is "unreasonable and oppressive." Fed.R.Civ.P. 45(b). Moreover, the court is persuaded that the documents requested are relevant to the scope of Bloch's projected direct testimony.

■ In addition to their claim that production would be unduly burdensome, IBM and Bloch oppose enforcement of the subpoena on the ground that the documents sought are of a confidential and sensitive nature. Disclosure of these documents, it is alleged, would cause a "severe and irreparable injury." (Memorandum of IBM and Bloch at 7.) Yet these claims of confidentiality are blanket and generalized. Defendant and Bloch have not demonstrated that the documents sought are of a confidential and sensitive nature.

Finally, IBM and Bloch assert that "plaintiff's subpoena seeks documents owned by IBM in blatant disregard of its prior representation to the Court." (Memorandum of IBM and Bloch at 5.) Specifically, IBM and Bloch rely upon the statement made by the government on March 10, 1978 that "plaintiff seeks no documents owned by IBM from IBM employee witnesses . . . ." (Plaintiff's Memorandum in Response to IBM's Motion for a Continuance, March 10, 1978, at 3.) The complete statement, contained in Plaintiff's Memorandum in Response to IBM's Motion for a Continuance, at 3, is as follows:

> As stated in *Plaintiff's Memorandum in Response to Defendant's Motion For an Order Permitting IBM to Reopen Discovery* of March 10, 1978, plaintiff seeks no documents owned by IBM from IBM employee witnesses, and no categories or quantities of documents even remotely comparable to what IBM sought from plaintiff's nonparty witnesses, for example, Gary B. Friedman (5 city blocks of documents, see Tr. 40394–40420) and Frederic G. Withington (180,000 document pages, including 40 file drawers, see Tr. 56647–56655).

In response to IBM's and Bloch's allegation that it has reneged on its representation to the court, the government maintains that IBM and Bloch have taken the above-quoted statement out of context and have ignored the cross reference in the quote crucial to its understanding. That cross reference to Plaintiff's Memorandum in Response to Defendant's Motion for an Order Permitting IBM to Reopen Its Discovery, also dated March 10, 1978, at 5, contains the following language upon which the government in part relies:

> Any subpoenas duces tecum which plaintiff would serve upon defendant's trial witnesses, assuming such authority to be granted by the Court, would not seek documents from the witness' company *except and only* to the extent that such documents are within the custody and control of the subpoenaed witness *and* relate to the scope of his direct examination as outlined in defendant's witness ID

form, or relate to any potential bias of the witness. [Emphasis in original]

According to the government, "[i]t is logically impossible for the memoranda to be read as inconsistent." (Plaintiff's Reply Memorandum to the instant motion at 2.)

 This court will not join in the verbal gymnastics in which the parties are engaged. What is clear beyond any doubt is that the court's orders authorizing the government to issue deposition subpoenas on certain of IBM's prospective trial witnesses did not prohibit the government from seeking IBM-owned documents in connection with IBM employees whose trial testimony is pending. *See* Orders dated July 28, 1977 and April 25, 1978.

Accordingly, the court will enforce the December 18 subpoena to the limited extent requested by the government in the instant motion. It is hereby ordered that Bloch immediately produce to the government for inspection and copying the following documents:

1. Copies of speeches and other publications of Bloch;

2. Documents constituting what IBM counsel has characterized as a "personal file" (documents not maintained in the files of IBM) responsive to the subpoena served on December 18, 1978;

3. The resume which IBM counsel represents has been prepared for Bloch by IBM;

4. Monthly reports from the East Fishkill plant of IBM which were authorized by Bloch and sent to his immediate supervisor during the period August 1975 to December 1978;

5. Any patents granted to Bloch individually or with other persons;

6. Any copies of interviews which Bloch has granted as described in paragraph 8 of the December 18, 1978 subpoena duces tecum;

7. All documents (a) authored by, (b) addressed to, or (c) copied to Bloch, from January 1, 1972 to the present, whether in current files or "dead storage" files, which relate to components and/or semiconductors.

SO ORDERED.